J-A17025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BONNIE MARIE ROHN | : | |
| | : | |
| Appellant | : | No. 1858 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 1, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0001417-2018

BEFORE:  BOWES, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McCAFFERY, J.:                **FILED:  FEBRUARY 19, 2021**

Bonnie Marie Rohn (Appellant) appeals from the judgment of sentence[1]

entered in the Northampton County Court of Common Pleas, following her

guilty plea to statutory sexual assault.[2]  Appellant was also directed to register

---

[1] While Appellant purported to appeal from the May 24, 2019, order denying her post-sentence motion, the appeal lies properly from the judgment of sentence entered February 1, 2019.  ***See Commonwealth v. Borovichka***, 18 A.3d 1242, 1245 n.1 (Pa. Super. 2010).  Accordingly, we have amended the caption.

Furthermore, we note the Commonwealth had also taken an appeal from Appellant's judgment of sentence, docketed in this Court at 1867 EDA 2019. On December 30, 2019, however, the Commonwealth discontinued its appeal.

[2] 18 Pa.C.S. § 3122.1(b) ("A person commits a felony of the first degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is 11 or more years older than the complainant and the complainant and the person are not married to each other.").

for life under the Pennsylvania Sex Offender Registration and Notification Act[3] (SORNA). On appeal, she argues: (1) Subchapter H of SORNA is unconstitutional as violative of due process; and (2) the registration requirements are overly onerous and thus constitute cruel and unusual punishment. After careful review, we vacate the order denying Appellant's post-sentence motion, and remand in accordance with our Supreme Court's decision in **Commonwealth v. Torsilieri**, 232 A.3d 567 (Pa. 2020). Otherwise, we affirm the judgment of sentence.

_____

[3] 42 Pa.C.S. §§ 9799.10 to 9799.42. This Court has summarized:

> SORNA was originally enacted on December 20, 2011, effective December 20, 2012. Act 11 was amended on July 5, 2012, also effective December 20, 2012, and amended on February 21, 2018, effective immediately, known as Act 10 of 2018, and, lastly, reenacted and amended on June 12, 2018. Acts 10 and 29 of 2018 are referred to collectively as SORNA II. Through Act 10, as amended in Act 29 (collectively, SORNA II), the General Assembly split SORNA I's former Subchapter H into a Revised Subchapter H and Subchapter I. Subchapter I applies to sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012. **See** 42 Pa.C.S.A. §§ 9799.51-9799.75. Subchapter I contains less stringent reporting requirements than Revised Subchapter H, which applies to offenders who committed an offense on or after December 20, 2012. **See** 42 Pa.C.S.A. §§ 9799.10-9799.42.

**Commonwealth v. Asher**, ___ A.3d ___, ___, 2020 WL 7487519 at *2 n.5 (Pa. Super. 2020) (some citations to legislative history omitted).

Here, Appellant's offenses occurred in 2017; thus, she is subject to registration under Revised Subchapter H.

From January 2017 through December 2017, Appellant, who was 33 to 34 years old, engaged in oral, vaginal, and anal intercourse with a male victim, who was then 15 to 16 years old. Order of Court, 5/24/19, at 1-2. The victim was living with Appellant, N.T. Plea, 10/26/18, at 8, and was "in her care." Affidavit of Probable Cause, 2/9/18, at 1. On October 26, 2018, Appellant pleaded guilty to one count of statutory sexual assault, graded as a felony of the first degree.

On February 1, 2019, the trial court sentenced Appellant to 12 months, less two days to 24 months, less one day's imprisonment, to be followed by eight years' probation.[4] The court also ordered Appellant to comply with lifetime registration under SORNA.[5] Appellant objected on the record, arguing that SORNA registration "has been found to be unconstitutional in 36 of our neighboring counties." N.T., 2/1/19, at 57. The Commonwealth responded that the "legislature has enacted Act 29, which is Constitutional unless the courts deem otherwise." *Id.* at 57-58.

---

[4] This "sentence was in the mitigated range by two days." Order of Court at 3. Appellant was **not** found to be a sexually violent predator. N.T. Sentencing, 9/1/19, at 58.

[5] At the sentencing hearing, the parties referred to "lifetime registration under Megan's Law." N.T., 9/1/19, at 57.

Nevertheless, we note statutory sexual assault under 18 Pa.C.S. § 3122.1(b) — to which Appellant pleaded guilty — is a "Tier III" offense, carrying lifetime registration. *See* 42 Pa.C.S. § 9799.14(d)(3) (Tier III sexual offenses), 9799.15(a)(3) (individual convicted of a Tier III sexual offense shall register for life).

On February 11, 2019, both the Commonwealth and Appellant filed timely post-sentence motions. The Commonwealth challenged the terms of Appellant's sentence, whereas Appellant argued SORNA is punitive in nature and violates due process under the United States and Pennsylvania Constitutions. Appellant relied on the decision in **Torsilieri**, in which the Chester County Court of Common Pleas had ruled Subchapter H unconstitutional. Appellant averred SORNA "punishes a person based on the application of an irrebuttable presumption," and "impairs the fundamental right of reputation without notice and opportunity to be heard." Appellant's Motion for Post-Sentence Relief, 2/11/19, at 3. Appellant thus requested the court to declare SORNA unconstitutional and to vacate the portion of her sentence requiring her to register.

The trial court issued a detailed order on May 24, 2019, denying both parties' post-sentence motions and setting forth its rationale.

On June 21, 2019, Appellant filed a timely notice of appeal, and on June 24th, the Commonwealth filed a timely notice of appeal. The trial court entered separated orders, directing each party to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Both parties timely complied. The Commonwealth's appeal was docketed in this Court at 1867 EDA 2019. On December 30, 2019, however, the Commonwealth filed a praecipe to discontinue its appeal.

At the present docket, 1858 EDA 2019, Appellant presents two issues for our review:

> A. Does the application of SORNA including its amendments of February 21, 2018 signed into law as Act 10 of 2018 (H.B. 631) deny [Appellant] and all of those defendants like situated due process under Articles 1 and 11 of the Pennsylvania Constitution by creating an irrebuttable presumption that those convicted of enumerated offenses under the Act "pose a high risk of committing additional sexual offenses" depriving them of their fundamental right to reputation and rendering the statute unconstitutional?
>
> B. Does the application of SORNA including its amendments of February 21, 2018 signed into law as Act 10 of 2018 (H.B. 631) constitute criminal penalties and therefore its imposition of a mandatory life time registration constitutes cruel and unusual punishment for [Appellant] and all of those defendants like situated in violation of the Fifth and Fourteenth Amendments [to] the United States Constitution and Article 1 Section 13 of the Pennsylvania Constitution?

Appellant's Brief at 3.

In her first issue, Appellant avers "the use of an irrebuttable presumption[,] to classify an individual as a person who is a high risk to reoffend[,] is a constitutional violation." Appellant's Brief at 10. Appellant relies on *In re J.B.*, 107 A.3d 1 (Pa. 2014) (*J.B.*), in which the Pennsylvania Supreme Court held the application of SORNA to juvenile offenders is unconstitutional. Appellant notes the *J.B.* Court applied the following test for determining whether an irrebutable presumption is unconstitutional: (1) whether the presumption "encroaches on an interest protected by the due process clause; (2) the presumption is not universally true; and (3) reasonable alternative means exist for ascertaining the presumed fact."

Appellant's Brief at 11 (citation omitted).  Applying these factors to the instant matter, Appellant maintains:  (1) she has a fundamental right to reputation that is "protected by the due process clause [and] which is encroached upon;" (2) "there was evidence from an expert psychologist that Appellant "presents as a low-risk offender," and furthermore, that "research on female sex offenders indicates that in general, they tend to be at a low risk for sexual re-offending;" and (3) there exists a reasonable alternative means for ascertaining the presumed fact — a sexually violent predator assessment or similar assessment to determine the likelihood of re-offense.  *Id.* at 14-16.

After careful review of the procedural history, the parties' arguments, and the applicable law, we conclude this issue is governed by this Court's recent decision in *Asher*, 2020 WL 7487519.  In that case, we stated:

> While this case was pending on appeal, the Pennsylvania Supreme Court decided *Torsilieri*[.  T]he Chester County Court of Common Pleas found Revised Subchapter H of SORNA II violated several provisions of both the United States and Pennsylvania Constitutions.[  T]he trial court concluded the statute violated *Apprendi*[6] and *Alleyne*[7] by allowing "the imposition of enhanced punishment based on an irrebuttable presumption of future dangerousness that is neither determined by the finder of fact nor premised upon proof beyond a reasonable

---

[6] *Apprendi v. N.J.*, 530 U.S. 466, 490 (2000) (other than the fact of a prior conviction, any fact that increases penalty for crime beyond prescribed statutory maximum must be submitted to jury and proved beyond reasonable doubt; it is unconstitutional for legislature to remove from jury the assessment of facts that increase prescribed range of penalties).

[7] *Alleyne v. U.S.*, 570 U.S. 99, 108 (2013) (any fact that increases mandatory minimum sentence for crime is an element that must be submitted to jury and found beyond reasonable doubt).

doubt." *Torsilieri*, [232 A.3d] at 575, *quoting* Trial Court Order, 7/10/18, at 3. The Pennsylvania Supreme Court, emphasizing that deference to legislative policy-making is subject to constitutional limitations, considered the trial court's conclusions in two categories: (1) an irrebuttable presumption challenge, and (2) based on its determination of punitive effect, the trial court concluded that the registration requirements, which can result in lifetime registration branding an offender as at high risk of recidivating, violated (a) the requirements of *Apprendi* and *Alleyne*, (b) imposed sentences in excess of the statutory maximum sentence, (c) constituted cruel and unusual punishment, and (d) violated the separation of powers doctrine by preventing trial courts from imposing individualized sentences [sic]. *Torsilieri*, [232 A.3d] at 582-83.

[In *Torsilieri*, t]he Pennsylvania Supreme Court applied the *Mendoza*-*Martinez* factors and evaluated "the degree to which the trial court's conclusions [were] based upon the scientific evidence presented by [Torsilieri."[8]] *Torsilieri*, [232 A.3d]at 588. At his post-sentence hearing, Torsilieri had presented the affidavits and supporting documents of three expert witnesses "concluding that sexual offenders generally have low recidivism rates and questioning the effectiveness of sexual offender registration systems such as SORNA." *Id.* at 574. The Commonwealth stipulated to the content of the exhibits, but not

---

[8] *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963). The Court in *Muniz* explained: the *Mendoza-Martinez* factors are

a framework for determining whether the provisions of the Alaska statute were so punitive in effect as to negate the legislature's intention to identify the scheme as civil. The *Mendoza-Martinez* factors are as follows: "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment — retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned[.]"

*Muniz*, 164 A.3d at 1200 (OAJC) (citation omitted).

to their validity or relevance, and did not offer any rebuttal expert testimony or documents with respect to these witnesses. *Id.* The Court stated:

> We observe that the scientific evidence presented by [Torsilieri] during the post-sentence motion arguably influenced the trial court's consideration of all five relevant factors and overtly drove the analysis of three. Accordingly, **we conclude that its labeling of Revised Subchapter H as punitive was impacted by its assessment of [Torsilieri's] expert evidence such that reevaluation of the balancing of the seven *Mendoza-Martinez* factors is appropriate following presentation of additional scientific evidence on remand.** The trial court's conclusion that Revised Subchapter H is punitive inevitably resulted in the court's determination that the registration requirements were part of [Torsilieri's] criminal sentence, and thus, subject to the various constitutional and statutory protections. **Evaluating each challenge raised by [*Torsilieri*], the trial court concluded that [ ] Revised Subchapter H violated the dictates of *Apprendi* and *Alleyne* because it subjected offenders to increased registration provisions without a jury determining that the offender posed a risk of future dangerousness beyond a reasonable doubt[.]**

*Id.* at 594 (emphasis added). Essentially, the Pennsylvania Supreme Court directed the trial court to reevaluate the *Mendoza*-*Martinez* factors, this time considering not only the defense's scientific evidence, but that of the Commonwealth as well.

*Asher*, ___ A.3d at ___, 2020 WL 7487519 at **3-4 (some citations omitted).

The *Asher* Court then addressed the procedural history and issues before it:

> Here, although Asher properly preserved his challenges at sentencing and in post-sentence motions, there is no factual record. Therefore, in accordance with *Torsilieri*, we vacate and remand for a hearing at which the parties can present evidence for and against the relevant legislative determinations discussed

above. *See Commonwealth v. Mickley*, 240 A.3d 957 (Pa. Super. 2020) (where defense counsel attempted to introduce evidence of scientific studies at hearing on motion to bar application of SORNA, this Court remanded in accordance with *Torsilieri* for evidentiary proceedings on whether SORNA creates facially unconstitutional irrebuttable presumption against sexual offenders).

*Id.* at *4.

Again, we conclude Appellant's first claim is governed by *Asher*. Accordingly, we vacate the order denying her post-sentence motion and remand for proceedings consistent with *Torsilieri*.

Appellant's second claim on appeal is that SORNA's registration requirements "are so onerous as to render them a punishment and violative of [the] 5th and 14th Amendments [to] the United States Constitution and Article 1 Section 1 of the Pennsylvania Constitution."  Appellant's Brief at 17. In support, she presents the following arguments:  in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017) (plurality), the Pennsylvania Supreme Court applied the *Mendoza-Martinez* factors and determined "SORNA's registration provisions constitute punishment notwithstanding the General Assembly's identification of the provisions as nonpunitive . . . ."  Appellant's Brief at 17, *quoting Muniz*, 164 A.3d at 1193 (opinion announcing the judgment of the court) (OAJC).  Appellant reviews each *Mendoza-Martinez* factor and argues the Act 10 amendments should likewise be found punitive in nature.  Appellant's Brief at 18-26.  Pertinently, it was "the in-person reporting requirements [that] constituted the direct restraint upon the

registrant and under the Act 10 modification[,] that requirement still exists, [although] modified." *Id.* at 19. Presently, "[t]he actual number of times that a lifetime registrant like [Appellant] will have to appear in person will vary but for the first 3 years[,] it will be at least 12 times with an additional 40 times if she lives to be 78." *Id.*

Pursuant to *Mickley* — cited in the *Asher* opinion — we conclude no relief is due. In *Mickley*, the defendant averred "the imposition of mandatory twenty-five (25)-year sex offender registration for all Tier II offenses under SORNA is a cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution." *Mickley*, 240 A.3d at 960. This Court stated:

> The *Torsilieri* Court did not reach the merits of any of the constitutional claims at issue, determining instead that the factual record was not sufficiently developed in the trial court. The Court concluded a remand was appropriate "to allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting offenders' constitutional rights." [*Torsilieri*, 232 A.3d at 587.]

*Mickley*, 240 A.3d at 962. The *Mickey* panel likewise remanded the case before it: "Here, despite defense counsel's attempt [sic], no evidence was presented at the hearing on Mickley's post-sentence motion. Thus, in accordance with *Torsilieri*, we vacate the order denying Mickley's post-sentence motion and remand for a hearing at which the parties can present

evidence for and against the relevant legislation determinations discussed above." ***Id.*** at 963.

Although the defendant was a Tier II offender and was subject to a 25-year registration term, and Appellant in this case is a Tier III offender and thus required to register for life, we conclude the discussion in ***Mickley*** is applicable. Thus, we do not reach the merits of Appellant's constitutional challenge to lifetime registration requirements on cruel and unusual punishment grounds. Instead, on remand, the parties may present argument and evidence to the trial court on this issue.

For the foregoing reasons, we vacate the order denying Appellant's post-sentence motion and remand for a hearing at which the parties may present evidence for and against the relevant legislation determinations discussed above.

Judgment of sentence affirmed. Order denying Appellant's post-sentence motion vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/21